IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**ANTHONY L. MANDILE**,

           Plaintiff,

vs.

**COMMISSIONER** of Social Security Administration,

           Defendant.

Civil Case No. 08-6405-KI

OPINION AND ORDER

    John E. Haapala, Jr.
    59 E. 11th Avenue, Suite 125
    Eugene, Oregon  97401

        Attorney for Plaintiff

    Dwight C. Holton
    United States Attorney
    District of Oregon

Page 1 - OPINION AND ORDER

Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon  97204-2902

David Morado
Regional Chief Counsel
L. Jamala Edwards
Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington  98104-7075

       Attorneys for Defendant

KING, Judge:

Plaintiff Tony Mandile brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner denying Mandile's application for disability insurance benefits ("DIB"). I affirm the decision of the Commissioner.

## BACKGROUND

Mandile filed an application for DIB on December 20, 2005, alleging disability due to glaucoma and mental impairments beginning December 1, 2003. The application was denied initially and upon reconsideration. After a timely request for a hearing, Mandile, represented by a non-attorney representative, appeared and testified before an ALJ on January 29, 2008. On February 29, 2008, the ALJ issued a decision finding that Mandile was not disabled within the meaning of the Act and therefore not entitled to benefits. This decision became the final decision

of the Commissioner when the Appeals Council declined to review the decision of the ALJ on October 23, 2008.

The Commissioner granted Mandile supplemental security income ("SSI") benefits as of January 1, 2006, based on a finding of disability secondary to mental impairments. That decision is not at issue here.

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of DIB to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). To qualify for DIB, a claimant who alleges the onset of disability after the age of 31 must be fully insured as defined in 42 U.S.C. § 414 and must have at least twenty quarters of coverage in the previous forty quarters (known as "20/40"). 42 U.S.C. § 423(c)(1); 20 C.F.R. § 404.130. The 20/40 requirement means, in short, that in the 10 years (40 quarters) leading up to when the disability began, a claimant must have worked and paid taxes for at least 5 years (20 quarters). However, a claimant who is found to be statutorily blind is relieved of meeting the 20/40 requirement. 42 U.S.C. § 423(c)(1).

"Blindness" is defined as:

central visual acuity of 20/200 or less in the better eye with the use of a correcting lens. An eye which is accompanied by a limitation in the fields of vision such that the widest diameter of the visual field subtends an angle no greater than 20 degrees shall be considered for purposes of this paragraph as having a central visual acuity of 20/200 or less.

42 U.S.C. § 416(i)(1)(B).

**STANDARD OF REVIEW**

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards. Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). Substantial evidence is more than a "mere scintilla" of the evidence but less than a preponderance. Id. "[T]he commissioner's findings are upheld if supported by inferences reasonably drawn from the record, and if evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004) (internal citations omitted).

**FACTS**

I.     Mandile's History

Mandile was 52 years old at the time of the ALJ's decision. She[1] has obtained a GED.

Gordon Miller, M.D., diagnosed Mandile with "advanced uncontrolled" glaucoma in December 2003. She complained of pressure behind her right eye and decreased peripheral vision. Her visual acuity was 20/50 in the right eye and 20/25 in the left. In January 2004, her right eye tested at 20/60 and her left at 20/30. In February, her right eye had declined to 20/70 and her left to 20/40. Her vision stabilized in March, although she still complained of pressure in her right eye. Thereafter, the visual acuity in her right eye continued to decline (20/100 in May, 20/300 in September, and 20/200 in December) while her left eye improved for a time and then worsened slightly (20/30 in May, 20/40 in September, and 20/50 in December).

---

[1] I will refer to Mandile as a female in this opinion because the record reflects she identifies as a female. Tr. 15. I make this point of clarification because the ALJ refers to Mandile as a male.

Dr. Miller also tested Mandile's peripheral vision using the Humphrey Field Analyzer central 30-2 threshold test ("HFA 30-2") in January and December 2004 and again in October 2005. Her right eye consistently tested outside normal limits, but her left eye tested within normal limits.

In February 2005, Mandile underwent laser trabeculoplasty to reduce the pressure in her right eye. Testing in August 2005 revealed vision acuity of 20/100 on the right and 20/30 on the left.

II.     The ALJ's Decision

In his decision, the ALJ determined that Mandile was insured for statutory blindness purposes through December 31, 2004. However, the ALJ found that Mandile was not "blind" under section 216(i) of the Social Security Act during the relevant period of time. Thus, because Mandile was unable to establish that she was statutorily blind, the ALJ concluded she was ineligible for DIB.

## DISCUSSION

I.      "Blindness" as Defined in Section 216(i)

Mandile states that the ALJ erred in concluding she was not "blind" as defined in section 216(i) of the Act. To be statutorily blind, the plaintiff must have a central visual acuity of 20/200 or less in the better eye with the use of a correcting lens. 42 U.S.C. § 416(i)(1)(B). This requirement may be met where the plaintiff has an eye which is accompanied by a limitation in the field of vision such that the widest diameter of the visual field subtends an angle no greater than 20 degrees. Id.

Mandile claims that the ALJ ignored Dr. Miller's observations and treatment notes. Specifically, she argues that the ALJ neglected to address Dr. Miller's findings regarding Mandile's loss of peripheral vision.

The ALJ noted that Dr. Miller diagnosed Mandile with "advanced uncontrolled glaucoma" in December 2003. Tr. 11, 239. The ALJ also reported that while Mandile's right eye measured 20/300 at its worst, the left eye was only 20/50 at its worst. He opined that, as a result, Mandile did not meet the central visual acuity requirement for blindness because her eyesight was better than 20/200 in the better eye. The ALJ did not evaluate any evidence regarding Mandile's peripheral vision.

As I note above, even if the better eye measures a visual acuity better than 20/200, an eye is considered to have a visual acuity of 20/200 or less under the Act if it is "accompanied by a limitation in the fields of vision such that the widest diameter of the visual field subtends an angle no greater than 20 degrees." 42 U.S.C. § 416(i)(1)(B). The ALJ did not discuss this portion of the statute in his decision.

Despite the ALJ's failure to evaluate whether Mandile met the alternate criteria for blindness, the evidence would not support such a finding. As an initial matter, I point out that Mandile cites generally to the medical records for her contention that she is disabled, but does not explain how those records show she meets the statutory requirements for loss of field vision. Furthermore, the transcript pages she references do not demonstrate a problem with peripheral vision in her *better eye*. Thus, although Dr. Miller noted decreased peripheral vision on

Mandile's right eye in December 2003 and again on March 8, 2004,[2] these notes are irrelevant because her better eye was her left eye. Indeed, Dr. Miller noted Mandile's left eye showed her peripheral vision was "wnl," meaning it was within normal limits. Tr. 229, 223.

Mandile additionally refers to the results of the Humphrey Field Analyzer ("HFA") tests that Dr. Miller performed on her. She again implies that these tests show she was statutorily blind based upon her visual field loss.

Pursuant to Social Security Ruling 07-01p, Evaluating Visual Field Loss Using Automated Static Threshold Perimetry, an individual's visual field loss may be measured using visual field measurements from an automated static threshold perimetry test, like the HFA 30-2. SSR 07-01p, 72 Fed. Reg. 41,796 (July 31, 2007). In determining whether an individual has visual field loss, SSR 07-01p directs the reviewer to the portion of the test that recorded the mean deviation, or "MD." Id. at 41,800. An MD equal to or greater than -5 dB indicates that the visual field is normal. The HFA 30-2 test results on Mandile's left eye, on January 5, 2004 and on December 8, 2004, showed an MD of -1.00 dB and -0.87 dB respectively. These results demonstrate that Mandile's visual field was normal in her left eye, as the MD was greater than -5 dB.

Mandile references several pages in the record containing results from the Humphrey Field Analyzer central 60-4 threshold test ("HFA 60-4"). That test is not listed as one that meets the Agency's criteria for measuring the extent of an individual's visual field loss. Id.; see also 20

---

[2] I read Dr. Miller's record as "decreased field OD," meaning right eye, not OS or left eye, as Mandile seems to believe. Tr. 235.

C.F.R. § 404, Subpart P, Appendix 1, Listing 2.00A.6.a.iv (acceptable tests include Humphrey 30-2 or 24-2 tests).  Furthermore, Mandile fails to explain how the test results show visual field loss in her left eye.

In sum, although I agree with Mandile that the ALJ failed to address the alternative definition of "blindness" related to reduced peripheral vision, because the medical record does not support a level of loss that would meet the definition of "blindness," any error is harmless. See Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007) (error that does not affect result does not warrant reversal of the Commissioner's final decision); Brawner v. Sec'y of Health & Human Servs., 839 F.2d 432, 434 (9th Cir. 1988) (error was harmless where record supported ALJ's finding).

II.    Listing 2.03

Mandile also argues that the ALJ failed to evaluate whether her impairment equaled Listing 2.03.[3]  She contends simply that the peripheral vision in her better eye was clearly abnormal.

The record reflects that Mandile does not meet Listing 2.03 since testing revealed her field vision was within normal limits in her left eye.  Furthermore, Mandile has failed to set out a theory as to how her condition was medically equivalent to any of the criteria identified in Listing 2.03.  See Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (plaintiff must offer theory as to how condition meets or equals listed impairment); Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005) (plaintiff bears burden of proving impairment meets or equals Listing).

In sum, although the ALJ neglected to evaluate Mandile's condition to determine whether it met or equaled the listings, any error was harmless because the record does not support such a finding and she offers no argument to the contrary.  See Parra, 481 F.3d at 747; Brawner, 839 F.2d at 434.

---

[3]Listing 2.03 requires:

> 2.03 *Contraction of the visual field in the better eye*, with:
>
> A. The widest diameter subtending an angle around the point of fixation no greater than 20 degrees;
> OR
> B. A mean deviation of -22 or worse, determined by automated static threshold perimetry as described in 2.00A6a(v);
> OR
> C. A visual field efficiency of 20 percent or less as determined by kinetic perimetry (see 2.00A7b).

20 C.F.R. Part 404, Subpt. P, App. 1, § 2.03.

Page 9 - OPINION AND ORDER

## CONCLUSION

The findings of the ALJ are based upon substantial evidence in the record and the correct legal standards. For these reasons, the court affirms the ALJ's decision.

IT IS SO ORDERED.

Dated this     28th     day of September, 2010.

                                  /s/ Garr M. King
                                  Garr M. King
                                  United States District Judge